UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 25-005-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KEVIN LEE FELTNER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

Defendant Kevin Feltner was indicted on January 16, 2025, on charges of possessing with intent to distribute 40 grams or more of fentanyl and possessing with intent to distribute 10 grams or more of fluorofentanyl.  [Record No. 1] The jury trial is scheduled to begin May 13, 2025.

The matter is pending for consideration of Feltner's motion to suppress evidence obtained during a search of his residence.  [Record No. 11] The motion was referred to United States Magistrate Judge Edward B. Atkins for issuance of a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Atkins issued an R&R, recommending that Feltner's motion be denied.  [Record No. 14] Feltner filed timely objections to the Magistrate Judge's R&R.  [Record No. 17] The undersigned has reviewed Feltner's objections but agrees that the Magistrate Judge's analysis is correct.  The motion to suppress, therefore, will be denied.

**I.**

On June 24, 2016, Feltner pled guilty to conspiring to distribute heroin. He was sentenced in October of that year to 37 months of imprisonment with a three-year period of supervised release to follow. Following release, Feltner violated the terms of his supervision multiple times, and received additional terms of imprisonment and periods of supervision.

In September 2024, Feltner was suspected of violating the terms of his supervised release yet again and a warrant was issued for his arrest. Thereafter, United States Deputy Marshals conducted a stakeout of Feltner's apartment at 312 Kristen Drive in Richmond, Kentucky. The deputies were outside Feltner's residence between 8:00 a.m. and 3:00 p.m. During this time, they observed several individuals entering the apartment and exiting shortly afterwards. Around 3:00 p.m., Felter exited the residence. Deputies and Richmond police officers proceeded to arrest the defendant in the apartment parking lot.

Officers found 16.3 grams of suspected methamphetamine and $380 during their search of Feltner. Following the arrest, officers did not obtain consent but proceeded to conduct a safety check of Feltner's apartment to determine if others remained inside. During the check, officers detected the odor of marijuana and observed Narcan on the kitchen table. [*Id.*] Richmond officers then applied for and obtained a state search warrant for Feltner's residence based on their observations. The officers subsequently conducted an in-depth search of the premises and found additional drugs and drug paraphernalia throughout the defendant's apartment. Based on this evidence, another search warrant was obtained for Feltner's cellphone; however, it could not be unlocked and further attempts to determine its contents were abandoned.

## II.

Feltner asks the Court to suppress the evidence found in his apartment, arguing that the officers' safety search on the day of his arrest was unlawful. He contends that excluding that evidence from the search vitiates probable cause. Thus, he contends that all evidence resulting from the later-issued search warrant should be suppressed. He also moves to suppress any evidence obtained from the search of his cell phone. The United States implicitly concedes in response that the safety search was unlawful. However, it argues that the excised affidavit still established probable cause. And even if that is not the case, it believes that the *Leon* good faith exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897 (1984).

Magistrate Judge Atkins recommends that Feltner's motion be denied. He concludes that although the excised affidavit does not provide enough information to support a finding of probable cause, the remaining facts contained in the affidavit provide a minimal nexus between the Defendant's residence and the evidence sought to allow the good-faith exception to apply. [Record No. 14, p. 9] He further recommends the denial of Feltner's request to suppress evidence obtained from a search of his cellphone because the government was unable to access it. However, Feltner continues to contend through his objections to the R&R that the *Leon* good-faith exception does not apply. [Record No. 17]

## III.

The Fourth Amendment's guarantee against unreasonable searches and seizures requires that warrants based upon probable cause describe with particularity the place to be searched and the persons and things to be seized. *Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Archibald*, 589 F.3d 289, 301 (6th Cir. 2009). When a defendant moves to suppress evidence obtained, courts examine "whether the [issuing] magistrate had a substantial basis

- 3 -

for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (citation omitted).  In other words, law enforcement "must submit an affidavit that indicates a fair probability that evidence of a crime will be located on the premises of the proposed search" demonstrating probable cause to support the warrant.  *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)); *see also United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) ("[P]robable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.")

An affidavit submitted in support of a search warrant also must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*) (citing *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).  And review of the sufficiency of evidence supporting the probable cause necessary to issue a warrant must be limited to information presented within the four corners of the affidavit.  *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).

Safeguards exist to prevent unlawfully obtained evidence from being admitted against a criminal defendant under the exclusionary rule.  *Mapp v. Ohio*, 367 U.S. 643 (1961).  Specifically, the exclusionary rule applies to evidence gained from an unreasonable search or seizure that runs afoul of the Fourth Amendment.  Yet, under the "good faith" exception, the exclusionary rule will not bar the government's introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently determined as deficient of probable cause.  *United States v. Leon*, 468 U.S. 897, 918-921 (1984).  The exception applies "unless the evidence is so lacking in indicia of probable cause as to render

- 4 -

official belief in its existence entirely unreasonable." *United States v. Watkins*, 179 F.3d 489, 494 (6th Cir. 1999); *see United States v. Silvey*, 393 F. App'x. 301, 305 (6th Cir. 2010) (courts should deny the good faith exception when "affidavit [is] so barren of detail that a reasonable officer would have known that [it] did not meet constitutional standards").

When officers act on objectively reasonable reliance of a search warrant subsequently determined to be deficient, the good faith exception can preserve the viability of evidence discovered by law enforcement. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 918-921). But there are four scenarios in which the exception will not apply:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Lewis*, 81 F.4th 640, 647 (6th Cir. 2023) (quoting *United States v. Rice*, 478 F.3d 704, 712 (6th Cir. 2007)). Here, Magistrate Judge Atkins concludes that the warrant did not sufficiently establish probable cause, but that the good-faith exception applies nonetheless. In response, Feltner argues that the good-faith exception is inapplicable because the affidavit attached to the search warrant was "bare-bones."

## IV.

A bare-bones affidavit "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge."

- 5 -

*Lewis*, 81 F.4th at 648 (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)) (cleaned up). However, "the standard by which an affidavit should be judged for purposes of the good faith exception 'is a less demanding showing than the substantial basis threshold required to prove the existence of probable cause in the first place.'" *Laughton*, 409 F.3d 744, 748 (quoting *Carpenter*, 360 F.3d at 595). And "[e]ven if an affidavit describing a suspect's drug activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a "*minimally sufficient*" nexus between the two." *United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021) (emphasis added).

Here, after excising all information obtained through the safety search, the affidavit included the following facts: (1) boilerplate language indicating that narcotics traffickers typically store contraband and conduct business at their residences, (2) Feltner was arrested based on a "probation violation" warrant related to original drug charges involving heroin[1], (3) U.S. Marshals observed several individuals enter Feltner's apartment on foot and exit shortly thereafter, and (4) the same day, officers discovered 16.3 grams of suspected methamphetamine and $380 in cash on Feltner's person *immediately* after he left the apartment. [Record No. 11-2, pp. 2 and 4]

Feltner argues that "[n]o reasonable police officer could have believed this was probable cause to search Feltner's apartment." [Record No. 17, p. 4] In support, he first contends "the affidavit is bereft of any facts showing Feltner was a narcotics drug trafficker"

---

[1] The government acknowledges that while Feltner was previously convicted of conspiracy to distribute heroin, the affidavit alleged Feltner violated probation related to the offense of mere possession of heroin. Looking to the four corners of the affidavit, the Court will considers only the latter. *See United States v. Brooks,* 594 F.3d 488, 492 (6th Cir. 2010).

because surveillance was only conducted the day of his arrest, and because officers had not previously conducted a controlled buy. [*Id.*] However, a controlled buy is not necessary to create a minimally sufficient nexus between Feltner's residence and drug trafficking activity. *See Carpenter*, 360 F.3d at 596 (good-faith exception applied when affidavit noted marijuana was growing near the defendants' residence and road connected residence and plants). And the *recency* of law enforcement surveillance bolsters the likelihood that contraband could be found within Feltner's apartment. *Contra United States v. Wilhere*, 89 F. Supp. 3d 915, 921 (E.D. Ky. 2015) (text messages indicated drug sales at home at least six months old failed to satisfy the good faith exception for a faulty search warrant).

Feltner next argues that no reasonable officer would believe an arrest warrant for the search of his apartment would be justified because he failed to contact his probation officer or based on a prior conviction for possession of heroin. He contends that neither that indicates he was currently trafficking in or selling drugs. In a vacuum, these statements would seem logical, but the Court's inquiry turns on the cumulative nature of the evidence. On September 19, 2024, U.S. Marshals observed several people enter and exit Feltner's apartment within a short period of time. Later that day, Feltner was arrested with a large quantity of suspected methamphetamine on his person and $380 cash in his pocket. Taken together with his prior heroin offense, the circumstances create a minimally sufficient nexus between drug trafficking activity and Feltner's home.

Feltner next asserts that "there is no indication as to how long the people stayed there or whether they were buying drugs." [Record No. 17, p. 5] But this assertion is contradicted by the affidavit, which states that several individuals who walked into Feltner's apartment that day exited shortly thereafter. [Record No. 11-2, p. 4] The short duration of the visits weighs

in favor of potential criminality than if the individuals had stayed for a longer period. Simply put, several short-term visitors aligns more closely with potential drug transactions than would be the case with longer-term visitors. Feltner also contends that because he was not meeting anyone in the parking lot where he was arrested to sell drugs, his personal possession of drugs is insufficient to justify a search of his apartment. However, when considered concomitantly with all of the other evidence outlined in the affidavit, the argument falls flat.

Feltner next attempts to contextualize this matter with other cases in which the Sixth Circuit found that the good-faith exception did not apply. However, this case is notably dissimilar to *United States v. McPhearson*, 469 F.3d 518, 520 (6th Cir. 2006), regarding both the sufficiency of the evidence and the nexus between Feltner's suspected conduct and his residence. In *McPhearson*, the defendant was arrested on assault charges while he was outside his home. At the time of arrest, crack cocaine was found on his person. Feltner argues "[w]hile the inference that a person outside his residence has stored drugs inside his residence can be drawn in certain cases, there must be evidence suggesting drugs will be found inside the home[.]" [Record No. 17, p. 5]

Here, such evidence was included in the affidavit. U.S. Marshals reported extensive foot-traffic in and out of Feltner's apartment the day he was arrested. And unlike *McPhearson*, Feltner's prior heroin-related offense was included in the affidavit. Additionally, Feltner was found with a large quantity of cash in addition to suspected drugs. *See United States v. Herod*, 172 F.3d 874 (6th Cir. 1999) ($400 in pants pocket reasonably established inference of drug distribution). The totality of facts presented establish a nexus between drug trafficking and Feltner's apartment, and they exceed the facts contained in the *McPhearson* affidavit.

- 8 -

Likewise, in *United States v. Wilhere*, 89 F. Supp. 3d 915, 921 (E.D. Ky. 2015), the affidavit contained no evidence explaining why contraband would likely be found within the defendant's safe. The court noted the affidavit "contain[ed] no facts suggesting that evidence of illegal activity would be found inside the safe, and [wa]s based entirely upon unfounded suspicions and beliefs. The nexus between the place searched and the evidence sought [wa]s not "minimally sufficient," but non-existent[.]" *Id.* The circumstances here are different. In the present case, the affidavit indicates that multiple people entered then exited Feltner's residence but stayed only briefly. Further, the affidavit references the fact that *nearly as soon as Feltner walked outside* he was found to be in possession of a large amount of cash and suspected methamphetamine. Finally, the affidavit referenced Feltner's prior conviction for an offense involving heroin. In conjunction with the other evidence, this would lead a reasonable officer to believe probable cause for drug trafficking existed.

This case is also factually district from *United States v. Ward*, 967 F.3d 550 (6th Cir. 2020). In *Ward*, the affidavit included (1) undated text messages discovered in November of 2017 indicating a previous drug sale at the defendant's residence, (2) a May 2018 trash pull containing "loose marihuana, cigar wrappers, and a plastic bag that appeared to contain illicit drugs at one time" and (3) the defendant's previous drug and weapon offense charges was bare bones. There, the text messages describing the prior drug sale were at least six months old. Here, however, Feltner was caught with drugs and cash *the same day* U.S. Marshals observed extensive and transient foot-traffic into his apartment. Further, Ward was not caught possessing drugs or cash outside his residence, unlike the case at hand.

Finally, this case is factually distinct from *United States v. Lewis*, 81 F.4th 640 (6th Cir. 2023). There, the defendant consented to a search of his laptop where police found several

files with names indicative of child pornography and thumbnail images later determined to have originated from videos of the defendant's cousin's children bathing naked in a bathroom. The defendant was arrested, and a magistrate signed a warrant for a subsequent search of the home and electronic devices. The affidavit stated that an "HSI" investigation identified the defendant as a person of interest, and that "during the search it became apparent that Mr. Lewis had used his laptop to view images of child sexual exploitation. The search based on consent was stopped and Mr. Lewis was arrested." *Id.* at 646. The affidavit also noted that

> [b]ased on the affiant's knowledge, experience and training, Edward L Lewis has demonstrated a pattern of criminal activity related to child pornography, and there is a reasonable likelihood that the user treats child pornography as a valuable commodity to be retained and collected, a characteristic common to many people interested in child pornography. It is, therefore, likely that evidence of the contraband remains in the user's possession[.]

*Id.* The Sixth Circuit concluded that the affidavit was bare bones because it consisted of minimal factual information, conclusory and unsubstantiated allegations, and boilerplate language. *Id.* at 649.

Feltner attempts to compare the affidavit in his case with the affidavit in *Lewis* because it also "contained boilerplate language and conclusory statements of drug trafficking." [Record No. 17, p. 7] But the present affidavit included much more than boilerplate language and conclusory statements. It includes specific facts detailing multiple individuals making brief stops at Feltner's apartment only to leave shortly thereafter, and it noted that when Feltner was arrested in the parking lot the same day, officers found a large quantity of suspected drugs and currency on his person.

**V.**

Based on the foregoing analysis, it is hereby

- 10 -

**ORDERED** as follows:

1.      Magistrate Judge Atkins' Report and Recommendation [Record No. 14] is **ADOPTED** and **INCORPORATED**, in full.

2.      Defendant Feltner's motion to suppress [Record No. 11] is **DENIED**.

Dated: March 27, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky